**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**LEWIS HEDRICK JR.**
**1611 LOCUST ST.,**
**BALTIMORE, MD 21226**

      **Plaintiff,**                                        **Civil Action No.: 1:26-cv-1216**

**v.**

**BERRY GLOBAL INC.**
**101 OAKLEY ST.**
**EVANSVILLE, IN 47710**

**QUEST DIAGNOSTICS**
**500 PLAZA DRIVE**
**SECAUCUS, NJ 07094**

      **Defendant.**

---

## COMPLAINT

---

Plaintiff Lewis Hedrick, Jr., by and through his counsel Emejuru Law LLC, brings

forth this action against Berry Global Inc. ("Berry") and Quest Diagnostics (Quest), and respectfully

states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 and § 1332.

2. Venue is proper under 28 U.S.C. § 1391(b) because Defendants conduct business and can be

   found in this judicial district.

3. The events giving rise to the claims in this action occurred in this judicial district.

4. Plaintiff has exhausted all administrative remedies with the Equal Employment Opportunity

   Commission and is in possession of a Notice of Right to Sue.

## PARTIES

5. Plaintiff Lewis Hedrick is a natural person and resident of the state of Maryland.

6. Berry Global, Inc. is an employer and regularly conducts and transacts business within the State of Maryland.

7. Defendant Quest Diagnostics is a business that regularly conducts and transacts business within the State of Maryland.

## FACTUAL ALLEGATIONS

8. Plaintiff Lewis Hedrick is a resident of the state of Maryland.

9. Hedrick was employed with Berry for approximately 26 years.

10. Prior to termination, Hedrick worked in a supervisorial role as Lead Machine Operator/Supervisor in the production warehouse. Hedrick was paid approximately $27.81, inclusive of benefits.

11. Prior to termination, Hedrick was 56 years old.

12. Hedrick was supervised by Marcus Jones. Jones is a Production Supervisor at Berry.

13. Prior to termination, Hedrick had a clean performance record with no history of discipline. Prior to termination, Hedrick was promoted by Berry.

### *Berry Global's Drug/Alcohol-Free Policy*

14. Berry has a Drug/Alcohol-Free Workplace Policy. Per the police, Berry employees are subject to U.S Department of Transportation Drug/Alcohol Policy.

15. Berry's Drug/Alcohol-Free Workplace Police states "the Company is required to comply with U.S. Department of Transportation ("DOT") drug and alcohol Policy…."

16. According to Berry's U.S. Employee Handbook, employees are subject to "Random Testing." "If a random drug test is given, an employee will be required to take the test during his/her shift. (Berry U.S. Employee Handbook at pg. 65).

17.  Berry's handbook provides for, "testing methods." The policy provides that "Specimen collection, transportation, chain of custody, and testing under this Policy will be conducted in accordance with the guidelines and standards of the U.S. Department of Health and Human Services ("DHHS") or applicable law and regulation to the extent of any variance with DHHS guidelines/standards." (*Id at* pg. 66).

18. Berry's handbook policy states: "for drug testing, confirmation testing will be conducted of any specimen resulting in an initial positive drug test, by a gas chromatography/mass spectrometry ("GC/MS") test before being considered a positive test under this Policy." The Medical Review Officer ("MRO") will contact the applicant or employee to discuss any confirmed positive drug test results **before contacting** the Company." *Id at pg. 67. (emphasis added)*

19. The policy further states: "an employee has the right to have the split specimen of the same (original) sample sent to the another DHHS laboratory or a laboratory certified, accredited or licensed in accordance with the applicable law for confirmatory retesting by GC/MS at the employees' expense, to be paid prior to re-testing. If the re-test is negative, the Company will reimburse the employee for the cost of the re-test." *Id.*

### Department of Transportation Policy 49 CFR Part 40 Section 40.171

20.  DOT policy 49 CFR Part 40 Section 40.171 provides that a Medical Review Officer ("MRO") **must** notify an employee about a positive test result and that the employee has: "72 hours" from the time of notification to request a test of the split of specimen. This is the same policy provided within Berry's handbook.

21. DOT policy 49 CFR Part 40 Section 40.171 furthers states that "when the employee makes a timely request for a test of the split of specimen under paragraphs (a) and (b) of this section, you must, as the MRO, immediately provide written notice to the laboratory that the tested

[sic] tested the primary specimen…" The MRO **must** also document the date and time of the employee's request.

**Department of Transportation Policy 49 CFR Part 40 Section 40.21**

22. The DOT policy states that an employer "will not take any action adversely affecting the employee's pay and benefits pending the completion of the MRO's verification process." (See DOT Policy 49 CFR Part 40 section 40.21(c)(2)(v)).

**Hedrick was drug tested on July 29, 2025, Quest Diagnostic Fails to Verify the results and Berry Terminates Hedrick without MRO Verification**

23. In or around July 29, 2025, Hedrick was selected for a random drug test at Berry. The test was conducted by Quest Diagnostics.

24. Ony July 30, 2025, Quest Diagnostics received the drug test.

25. After receiving the drug test, Quest Diagnostics, neither verbal or in writing, ever notified Hedrick about a positive drug test. Upon information and belief, Quest Diagnostics never assigned an MRO to Hedrick's test.

26. Consequently, Hedrick was never afforded the right to "mak[e] a timely request for a test of the split of specimen…" within 72 hours.

27. Quest Diagnostics simply informed Berry about the positive test result and Berry terminated Hedrick on August 8, 2025.

28. Quest Diagnostics failed to notify Hedrick Jr. about the positive test result before contacting Berry.

29. Berry failed to wait and confirm that an MRO had acted under DOT policy, before terminating Hedrick Jr.

30. Berry took action adversely affecting the Hedrick's pay and benefit, before the completion of the MRO's verification process.

4

31. After termination, Hedrick denied ever using drugs and told Berry's Human Resources that he believed it was a false positive.

### *Hedrick's Position is Replaced by a Younger, Lesser Qualified Individual*

32. Prior to termination, Hedrick was fulfilling Berry's legitimate expectations at the time of his termination.

33. Hedrick had no performance issues prior to termination. (more here regarding promotions etc.).

34. Prior to termination, Hedrick worked alongside and trained the younger employee, believed to be named "Shantel."

35. Shantel is believed to be in her 30's and started as a packer with Berry. In fact, Shantel told Hedrick that she wanted to be an Operator and Hedrick Jr. recommended Shantel to become an Operator.

36. Lewis had been an Operator since 2016.

37. At the time of his termination, Shantel had only been employed with Berry for in or around 4 years.

38. Upon information and belief, Shantel was promoted into Hedrick's role as Lead Operator/Supervisor immediately after he was terminated from Berry.

### PLAINTIFF'S CLAIMS

**Count 1**
**Age Discrimination – Age Discrimination in Employment Act of 1967**

39. Plaintiff incorporates all paragraphs herein *seriatim*.

40. Defendant, by and through, its agents or supervisors, terminated plaintiff because of his age.

41. Prior to termination, Plaintiff was performing at the Defendants legitimate expectations.

42. The facts give rise to a reasonable inference of unlawful discrimination based on age.

43. Plaintiff prays for judgment against Defendant for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

### Count 2
### Age Discrimination – Maryland Fair Employment Practices Act

44. Plaintiff incorporates all paragraphs herein *seriatim.*

45. Plaintiff's age was a motivating factor in Defendant's decision to terminate.

46. Defendant, by and through, its agents or supervisors, terminated plaintiff because of his age.

47. Prior to termination, Plaintiff was performing at the Defendants legitimate expectations.

48. The facts give rise to a reasonable inference of unlawful discrimination based on age.

49. Plaintiff prays for judgment against Defendant for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

### Count 3
### Wrongful Discharge

50. Plaintiff incorporates all paragraphs herein *seriatim.*

51. Defendant, by and through, its agents or supervisors, terminated plaintiff in violation of Maryland public policy.

52. DOT policy 49 CFR Part 40 Section 40.171 provides that a Medical Review Officer ("MRO") must notify an employee about a positive test result and that the employee has: "72 hours" from the time of notification to request a test of the split of specimen.

6

53.  DOT policy 49 CFR Part 40 Section 40.171 furthers states that "when the employee makes a timely request for a test of the split of specimen under paragraphs (a) and (b) of this section, you must, as the MRO, immediately provide written notice to the laboratory that the tested [sic] tested the primary specimen..." The MRO **must** also document the date and time of the employee's request.

54. The DOT policy states that an employer "will not take any action adversely affecting the employee's pay and benefits pending the completion of the MRO's verification process." (See DOT Policy 49 CFR Part 40 section 40.21(c)(2)(v).

55. The Defendant took adverse action against the Plaintiff before allowing the MRO to notify the Plaintiff about a positive test result

56. The Defendant took adverse action against the Plaintiff before allowing the MRO to notify the Plaintiff to challenge the test results.

57. The Defendant failed to follow any portions of DOT policy 49 CFR Part 40 Section.

58. Defendant, by and through, its agents or supervisors, terminated plaintiff in violation of Maryland Public Policy.

59. Plaintiff prays for judgment against Defendant for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

### Count 4
### Negligence

60. Plaintiff incorporates all paragraphs herein *seriatim*.

61. Defendant had a duty to conform to a certain standard of care for the protection of Plaintiff and his employment.

62. Defendant had a duty of care as a healthcare provider, owing patients a duty of care to accurately perform and report laboratory screening, and diagnostic services.

63. Defendant owed a duty of care to ensure drug tests are conducted, analyzed and reported with reasonable accuracy.

64. Defendants breached that duty of care by failing to property administer Plaintiff's drug test according to the law.

65. Plaintiff sustained losses and damages from the conduct of the Defendant.

66. Plaintiff's damages were the direct and proximate result of the Defendant's negligence.

67. Plaintiff prays for judgment against Defendant for all damages allowable by law, statutory damages, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

**PRAYER FOR RELIEF**
**PLAINTIFF DEMANDS TRIAL BY JURY**

Plaintiff prays that judgment, which exceeds $75,000.00, be entered against Defendant for all damages allowable (including statutory, actual, compensatory, nominal, and punitive) expenses, attorney's fees, and for such other and further relief as may be just and proper.

Dated this March 25, 2026

By _/s/Ikechukwu Emejuru_
Ikechukwu Emejuru
**Emejuru Law L.L.C.**
8403 Colesville Road
Suite 1100
Silver Spring, MD 20910
Telephone: (240) 638-2786
Facsimile: (240)559-2984
iemejuru@emejurulaw.com